IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | NO. 19-0482 |
| | : | |
| DANIEL WEARY | : | |
| | : | |

## MEMORANDUM

Defendant Daniel Weary brings this *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(l)(A)(i), arguing that his severe asthma places him at a heightened risk of serious complications if he were to contract the COVID-19 virus while incarcerated. ECF No. 70 at 1. The government opposes Defendant's Motion for Compassionate Release, arguing that Weary presents with only mild asthma and that "effectively reducing his sentence by more than half would fail to promote respect for the law and provide just punishment." ECF No. 74 at 1. The Court will now decide Mr. Weary's motion.

**I. BACKGROUND**

   *A. Mr. Weary's Criminal History*

Mr. Weary is a first-time offender with no prior criminal history, aside from one marijuana related arrest for which prosecution was withdrawn after Mr. Weary completed a diversion program. ECF No. 74 at 3. On September 10, 2020, Mr. Weary received a 48-month sentence for his role as the getaway driver in a series

1

of armed robberies occurring in and around Philadelphia on March 21, April 4, April 6, and April 8, 2019. *Id.* at 2-4. During each robbery, Mr. Weary's co-defendant, Victor Manson, entered the bank wearing a black face covering, approached the bank teller, brandished what appeared to be a firearm, and demanded cash. *Id.* at 2. Mr. Weary drove Manson to and from each bank knowing that Manson intended to steal from them. *Id.* at 3. Though the police never recovered the firearm used in the robbery, Manson has claimed that he used a replica firearm provided to him by Mr. Weary. *Id.* at 2. Mr. Weary and Manson were arrested after police witnessed Mr. Weary open the getaway car—which local police had connected with the bank robberies—with a key fob. *Id.* Prior to their arrest, police had identified the getaway car used in the robberies as belonging to Mr. Weary's father. *Id.* The men shared around $11,000 in stolen proceeds. *Id.* at 3.

     Mr. Weary made two requests to the Bureau of Prisons in September (ECF No. 72 at 7) and October 2020 (ECF No. 72 at 9) to be transferred to home confinement in light of his medical conditions and the COVID-19 pandemic. Those requests were denied on October 20, 2020 (ECF No. 72 at 8) and January 7, 2021 (ECF No. 72 at 10), respectively, because the Bureau lacked statutory authority to "designate a home confinement program for an inmate at the beginning of his or her sentence."

Mr. Weary is currently incarcerated at the Federal Detention Center in Philadelphia awaiting transfer to another facility where he will serve the remainder of his sentence. ECF No. 74 at 4. Mr. Weary was in local custody from April 12, 2019 until June 24, 2019 and has been in federal custody since June 24, 2019. *Id.* As of the date of filing this memorandum, Mr. Weary has served approximately 24 months of his 48-month sentence. He has not committed any disciplinary infractions during his time in custody. *Id.*

### B. Mr. Weary's Health History

Mr. Weary is a 29-year-old man with a history of asthma. In his Motion, Mr. Weary characterizes his asthma as "severe" (ECF No. 70 at 1), however, that characterization is not supported by his medical records. *See* ECF No. 72 at 6 (noting his condition with the billing code J45909 for unspecified asthma). Mr. Weary is a chronic care clinic patient and receives regular medical treatment. Mr. Weary has experienced asthma since childhood and his condition appears to be stable and controlled by medication. *Id.* at 1-6. Routine imaging conducted in July 2019 showed that Mr. Weary's lungs were clear and was otherwise unremarkable. *Id.* at 4. In follow-up appointments, he has denied experiencing "cough, wheezing, chest pain, [shortness of breath], difficulty breathing, dizziness or other respiratory complaint." ECF 75 at 7.

Mr. Weary is prescribed an albuterol rescue inhaler which he may use up to four times per day as needed but not daily. *Id.* at 3. He is also prescribed a mometasone furoate inhaler for daily use. *Id.* at 8. In July 2019, Mr. Weary reported using his albuterol inhaler about twice per week. ECF 72 at 5. By June 2020, Mr. Weary reported using his rescue inhaler two to three times per day. ECF 75 at 7. Mr. Weary denies ever being hospitalized due to his asthma and has not experienced an asthma attack while in BOP custody. *See* ECF No. 72 at 5; ECF No. 75 at 7.

Mr. Weary tested negative for COVID-19 on November 16, 2020, November 29, 2020, and December 2, 2020 after a potential exposure. ECF No. 75 at 26, 24, 2.

## II. DISCUSSION

Mr. Weary *pro se* moves for compassionate release under 18 U.S.C. § 3582(c)(l)(A)(i). ECF No. 70 at 1. "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), a defendant may petition the court to reduce or modify a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §

3582(c)(1)(A)(i)–(ii). The court must "consider[ ] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Rodriguez*, 2020 WL 1627331, at *2–3 (E.D. Pa. Apr. 1, 2020).  A defendant filing a motion under § 3582(c)(1)(A)(i) must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[1]

Congress has not defined the term "extraordinary and compelling reasons," but rather delegated that responsibility to the Sentencing Commission. *See* U.S.S.G § 1B1.13. The Sentencing Guidelines set out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* § 1B1.13, Application Notes 1(A)–(C). The Guidelines also include a fourth "catch-all" provision which allows a court to determine whether some other extraordinary or compelling reason exists. *See* § 1B1.13, Application Note 1(D).[2]

---

[1] The government does not contest that Mr. Weary has satisfied this step. *See generally* ECF No. 74.

[2] Before the First Step Act was enacted in 2018, "only the Director of the Bureau of Prisons . . . could file . . . 'compassionate-release motions.'" *Rodriguez*, 2020 WL 1627331, at *2. Although the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role, the Sentencing

A. *Defendant's Motion for Compassionate Release*

In his Motion for Compassionate Release, Mr. Weary argues that he is eligible for early release because his asthma places him at a particular risk for severe COVID-19. ECF No. 70 at 1. He notes that the Centers for Disease Control has categorized severe asthma as a pre-existing condition that places a person at "a greater danger of contracting and possibly dying from complications that accompany the COVID-19 virus." *Id.*

Mr. Weary reports that he is currently housed "crammed up in very small cells with roommates" and that the ventilation and airflow in his facility is poor. *Id.* at 2. He states that he has been encouraged to exercise in order to keep his asthma under control but that the size of the prison recreation area and the number of inmates makes it impossible to exercise while maintaining social distancing. *Id.* at 1, 2. Mr. Weary reports that he has been given a mask to wear around the prison

---

Commission "has not updated its policy statement to account for the changes . . . and the policy statement is now clearly outdated." *Id*. at *2–3; *see also United States v. Pawlowski*, 2020 WL 2526523, at *5 n.8 (E.D. Pa. May 18, 2020), aff'd, 2020 WL 3483740 (3d Cir. June 26, 2020) ("The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only '[u]pon motion of the Director of the Bureau of Prisons.'") (quoting U.S.S.G. § 1B1.13 & cmt. n.4). A majority of courts have found that, in its current form, the Sentencing Commission's policy statement "provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases).

but that "the masks only restrict [his] breathing even more and cause [him] to have anxiety attacks due to the lack of ventilation and airflow." *Id.* at 2. In his Motion, Mr. Weary claims that, due to an alleged lack of testing, he does not know how many people in his facility are sick with the virus and that the fear of contracting COVID-19 has made him extremely anxious. *Id.* at 2.

Mr. Weary expresses remorse in his Motion and has accepted responsibility for his actions. ECF No. 70 at 2, 4. Mr. Weary blames his participation in the crimes that lead to his incarceration on drug addiction, which he claims to have overcome while in prison. *Id.* at 4. Mr. Weary's release plan would have him released to home confinement at his parents' house, except when attending medical appointments or other approved activities. *Id.* at 5. He claims that he has a job offer at a healthcare company—Wyncote Wellness, LLC—pending his release. *Id.* at 3. In his Motion, Mr. Weary expresses that he hopes to work in and give back to his community if given the opportunity. *Id.* He denies presenting any danger to the community and hopes that his parents will provide the support system he needs to get his life back on track. *Id.*

B.  *The Government's Response in Opposition*

The Government's February 24, 2021 Response argues that Mr. Weary's Motion should be denied because he does not present a medical condition that places him at enhanced risk of COVID-19, he has served less than half of his 48-

month sentence, and because he has not received treatment for his alcoholism and drug addiction. ECF No. 74 at 1.

The Government first argues that Mr. Weary's asthma diagnosis does not present an extraordinary and compelling reason for release as required under 18 U.S.C. § 3582(c)(l)(A)(i)(1). The Government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious physical or medical condition" that may support release. ECF No. 74 at 12–13. However, the Government claims that Mr. Weary's asthma does not present such a risk. *Id.* at 13.

To support its claim, the Government notes that the CDC provides a list of medical conditions that place a person at increased risk of severe illness from COVID-19 and a separate list of conditions that "might" put a person at such a risk. *Id.* (citing *See Clinical Care Guidance (COVID-19)*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021)). The Government argues that inmates with conditions on the latter list do not present an extraordinary basis for relief. *Id.* The CDC's most recent guidance lists moderate to severe asthma as a condition that "might" place a person at an increased risk and does not list mild asthma in either category. *See id.* at 14. Because "moderate to severe asthma" only "might" pose an increased risk of

severe illness, the Government does not consider it an "extraordinary and compelling reason" sufficient to support early release. *Id.*

Further, the Government claims that "it does not appear that Mr. Weary presents even in that condition." *Id.* To support that point, the Government cites the National Asthma Education and Prevention Program's definition of "moderate persistent asthma" as occurring when: "(i) symptoms occur daily and inhaled short-acting asthma medication is used every day; (ii) symptoms interfere with daily activities; (iii) nighttime symptoms occur more than 1 time a week, but do not happen every day; or (iv) lung function tests are abnormal (more than 60% to less than 80% of the expected value), and PEF [peak expiratory flow] varies more than 30% from morning to afternoon." *Id.* at 14 (citing *Classification of Asthma*, UNIVERSITY OF MICHIGAN MEDICINE, www.uofmhealth.org/health-library/hw161158 (last updated Oct. 26, 2020)). In the Government's reading, "it appears that Weary has managed the symptoms of his asthma very well, has not had an asthmatic episode at least since he has been in custody at the FDC, has never been hospitalized for asthma, and his day-to-day activities at the FDC have not been curbed by this ailment." *Id.* at 16. Further, at 29 years old, Mr. Weary falls "well outside the age range with which COVID-19 risk is associated." *Id.* at 17.

The Government goes on to argue that, even if Mr. Weary's medical condition did present an extraordinary and compelling reason for relief, his Motion should be denied because Mr. Weary presents a danger to the community. *Id.* The Government notes that Mr. Weary's participation in the armed robberies was motivated by a drug addiction and that Mr. Weary has not yet undergone treatment for that drug addiction. *Id.* at 17–18. That lack of treatment "unfortunately, makes him more vulnerable to relapse and returning to criminal activities." *Id.* at 18. Mr. Weary's lack of criminal history and supportive family environment were considered by the Court at the sentencing hearing, which occurred after the COVID-19 pandemic began. *Id.* at 20–21. Those factors have not changed since Mr. Weary's sentencing, and so do not support modifying his sentence. In the Government's view, those factors also do not overcome the danger Mr. Weary still presents to the community and the fact that reducing his sentence by more than half "would not promote respect for the law." *Id.* at 21.

Regarding the conditions within FDC Philadelphia, the Government claims that, at the time of filing, "there are no inmates who are reported positive [for COVID-19], in a current population of 851 inmates." *Id.* at 8. In addition, a vaccination program has begun at FDC Philadelphia and will continue as supply becomes available. *Id.*

C. *Analysis*

Under 18 U.S.C. § 3582(c)(l)(A)(i), a court is permitted to modify a term of imprisonment after it has been imposed only "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable" and only when (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c); *see also Rodriguez*, 2020 WL 1627331, at *2–3.

### i. Extraordinary and Compelling Circumstances

The risk to Mr. Weary of contracting COVID-19, as a young adult with asthma, does not present an "extraordinary and compelling reason" sufficient to justify granting early release. The Court is obligated to evaluate Mr. Weary's Motion within the limits imposed by 18 U.S.C. § 3582(c)(1)(A)(i) and based on his individual circumstances. As the Third Circuit has explained, "[t]he mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Though Mr. Weary has shown he suffers from asthma, he has not demonstrated that his condition makes him especially susceptible to death or serious illness if he were to contract COVID-19.

Mr. Weary's medical records establish that he has a diagnosis of unspecified asthma which is controlled by medication. *See* ECF No. 75 at 3–7. As noted in the Government's brief, the CDC has identified "moderate to severe asthma" as one of several medical conditions that "might" place an individual "an increased risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, Mr. Weary's medical records suggest that his asthma is generally mild and has not caused him to experience asthma symptoms such as coughing, wheezing, or difficulty breathing since he was placed in BOP custody. *See* ECF 75 at 6. In an appointment with BOP clinical care staff, Mr. Weary denied ever being hospitalized due to his asthma and has not experienced an asthma attack since he entered BOP custody in 2019. *See* ECF No. 72 at 5; ECF No. 75 at 7. In his June 8, 2020, visit to the Chronic Care Clinic, Mr. Weary did report using his Albuterol rescue inhaler two to three times per day, which could indicate a more serious condition. ECF No. 75 at 7. However, on the whole, Mr. Weary's medical records inform the Court that his asthma is not sufficiently severe, according to the CDC guidelines, to place Mr. Weary at a higher risk of severe illness from COVID-19.

Other courts have denied similar requests for early release where the defendant suffered only from mild or intermittent asthma. *See e.g., United States v. Adeyemi*, 470 F. Supp. 3d 489 (E.D. Pa. 2020) (holding that, standing alone,

prisoner's life-long mild to intermittent asthma did not warrant compassionate release during COVID-19 pandemic); *United States v. Slone*, CR 16-400, 2020 WL 3542196 (E.D. Pa. June 30, 2020) (noting that an inmate's fear of contracting COVID-19 while diagnosed with mild asthma is not enough to support compassionate release); *United States v. Towel*, CR 17-519-6, 2020 WL 2992528 (E.D. Pa. June 4, 2020) (finding that mild, exercise-induced asthma does not present extraordinary and compelling reasons for release); *United States v. Torres*, CR 18-414, 2020 WL 3498156, at *9 (E.D. Pa. June 29, 2020) (noting that mild asthma is not a risk factor for severe illness from COVID-19 sufficient to grant compassionate release and citing cases).

As a Chronic Care Clinic patient, Mr. Weary receives regular health screenings. To date, he has not reported severe asthma symptoms in any appointment with BOP staff and his symptoms appear well-controlled by his prescribed inhalers. *See* ECF Nos. 72, 75. Mr. Weary's medical records suggest that he does not suffer from moderate or severe asthma and his mild asthma symptoms are not a risk factor recognized by the CDC.  Further, as there are no active cases among FDC Philadelphia inmates at the time of writing, the risk that Mr. Weary will contract COVID-19 while in BOP custody is only speculative. Though the Court is sympathetic to Mr. Weary's concerns, it cannot say, based on the evidence presented, that he faces any increased risk from contracting COVID-

19 that would support finding an extraordinary or compelling reason for release. As a result, the Motion will be denied.

### ii. 3553(a) Factors

As Mr. Weary has not presented a compelling reason for relief, the Court is not required to evaluate the § 3553 sentencing factors. The Court here notes that its evaluation has not changed since the sentencing hearing conducted on September 10, 2020 and that the sentencing factors—particularly the "need for the sentence imposed . . . to reflect the seriousness of the offense"—warrant Mr. Weary's continued detention. At the time of sentencing, the Court noted Mr. Weary's lack of criminal history, supportive family, and his struggle with opioid addiction brought on by a prescription after a work-related accident. Consideration of these factors and others led the Court to impose a sentence of 48 months, significantly below the 57-71-month range provided in the Sentencing Guidelines for Mr. Weary's offense level. While the Court commends Mr. Weary for accepting responsibility for his actions, the Court cannot find that releasing him from custody after he has served only half of a 48-month sentence would reflect the seriousness of his offenses.

## III. CONCLUSION

For the forgoing reasons, Defendant Daniel Weary's Motion for Compassionate Release is DENIED. An appropriate order will follow.

|  |  |
|---|---|
|  | **BY THE COURT:** |
| **DATED:** __4/9/2021__ | __/s/ Chad F. Kenney__ |
|  | **CHAD F. KENNEY, JUDGE** |